IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AUSTIN DYLAN EVERSOLE, #1626507, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 3:11-CV-1478-M (BK) |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner, a Texas state prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254.  For the reasons that follow, it is recommended that the habeas petition be denied.

**I.  BACKGROUND**

On March 2, 2010, Petitioner pled guilty to murder, criminal solicitation to commit capital murder, burglary of habitation, and theft of firearm, and was sentenced to 40-, 20-, and 2- year terms of imprisonment,. *State v. Eversole*, Nos. 33922CR, 33923CR, 33924CR, and 33925CR (40th District Court, Ellis County 2010).[1]  Petitioner did not appeal, but on August 4, 2011, he filed four state habeas applications, which the Texas Court of Criminal Appeals denied on November 9, 2011. *Ex parte Eversole*, Nos. WR-76,611-01 through 76,611-04, SHCR-01

---

[1] Petitioner also pled guilty to theft in case number 33926CR, but he does not challenge that conviction in this case.  (Doc. 1 at 2).  Although Petitioner was under 17 years of age at the time of his convictions, he was prosecuted as an adult and incarcerated within the Texas Department of Criminal Justice (TDCJ) under the Youthful Offender Program (YOP).  (Doc. 17, Exh. A; Doc. 3 at 1).

Vol. 3 at 402 and Vol. 1 at Action Taken sheet (Tex. Crim. App. Nov. 9, 2011).[2]

On June 27, 2011, before submitting his state applications, Petitioner filed the federal petition presently at issue. In seven grounds, he challenges his guilty pleas, confessions, arrest, search and seizure, and the ineffective assistance of counsel. (Doc. 1 at 7-12). Respondent argues the petition is time barred and lacks merit. (Doc. 17, 23, 33).

## II. ANALYSIS

### A. The Petition is Untimely

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year statute of limitations for state inmates seeking federal habeas corpus relief. *See* 28 U.S.C. § 2244(d). The one-year limitations period is calculated from "the date on which the judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review," and from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." *See* 28 U.S.C. § 2244(d)(1)(A) and (B). Subsections 2244(d)(1)(C)-(D) are inapplicable here.[3]

Petitioner's convictions became final, at the latest, on April 1, 2010 – thirty days after the March 2, 2010, judgments. *See* TEX. R. APP. P. 26.2(a)(1). The one-year limitations period

---

[2] "SHCR-01," followed by the volume number and page number, refers to the State Habeas Clerk's Record in writ number WR-76,611-01. Petitioner's other state habeas proceedings are cited in the same manner. However, whether the contents of the proceedings are the same, the Court will cite only to SHCR-01.

[3] Petitioner does not base his grounds on any new constitutional right under subparagraph (C). Moreover, the Court determines that the facts supporting his grounds became or could have become known prior to the date on which his conviction became final.

began running on April 2, 2010, and elapsed one year later on April 1, 2011. Statutory tolling is unavailable because Petitioner's state habeas applications, filed on August 4, 2011, were not pending in state court during the one-year period. *See* 28 U.S.C. § 2244(d)(2) (tolling limitations period during pendency of state habeas proceedings); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (no tolling because state habeas application was filed *after* federal limitations period expired). Although Petitioner turned 18 years old on April 20, 2011, 19-days *after* the one-year period expired, he is not entitled to statutory tolling based on his minority under Texas state law. *See Rowe v. Quarterman*, 3:07cv1963-P, 2008 WL 3850937 *4 n. 10 (N.D. Tex. 2008) (finding TEX. CIV. PRAC. & REM. CODE § 16.001(a)(1) and (b) – which considers a minor under the age of 18 to be under a "legal disability" for purposes of tolling limitations period for filing civil suit – inapplicable to "tolling provision in § 2244(d)(2) which is expressly limited to periods during the pendency of 'properly filed application(s) for state post-conviction or other collateral review with respect to the pertinent judgment or claim.'"). Therefore, the federal petition, deemed filed as of June 22, 2011, is clearly untimely under section 2244(d)(1)(A) absent equitable tolling.[4]

Equitable Tolling

Because the one-year statutory deadline is not a jurisdictional bar, it is subject to equitable tolling in appropriate circumstances. *See Holland v. Florida*, ___ U.S. ____, 130 S. Ct. 2549, 2560 (2010). To be entitled to equitable tolling, a petitioner must show "(1) that he has

---

[4] Petitioner initially filed this habeas action in the United States District Court for the Southern District of Texas, Galveston Division. Therefore, for purposes of this recommendation, the federal petition is deemed filed on June 22, 2011, the earliest possible date on which Petitioner could have handed his petition to prison officials for mailing. *See* Rule 3(d) of the Rules Governing Section 2254 Proceedings ("mailbox rule" applicable to inmates who use jail/prison's internal mailing system).

been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quotations and quoted case omitted). "Courts must consider the individual facts and circumstances of each case in determining whether equitable tolling is appropriate." *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) (quoted case omitted).

At the outset, the Court notes that this case does not present the type of due diligence and extraordinary circumstances required for equitable tolling. *See Howland v. Quarterman*, 507 F.3d 840, 845-46 (5th Cir. 2007) (summarizing cases). After his convictions became final, Petitioner waited more than fourteen months before he filed his federal petition. Having squandered the *entire* one-year period, Petitioner clearly failed to act with due diligence. *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (habeas petitioner must pursue the habeas "process with diligence and alacrity"); *see also Johnson v. Quarterman*, 483 F.3d 278, 287-88 (5th Cir. 2007) (to pursue rights diligently, a litigant cannot wait until near a deadline to make a filing, and then seek equitable tolling when something goes wrong). "[E]quity is not intended for those who sleep on their rights." *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999). In addition, neither his *pro se* status nor unfamiliarity with the law suffice as a basis for equitable tolling. *See Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) ("proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim."); *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir. 1999) (*per curiam*) ("neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling. It is irrelevant whether the unfamiliarity is due to illiteracy or any other reason.").

Petitioner implies that he should be entitled to equitable tolling because, as a minor[5] with mental and emotional issues from years of abuse, he lacked the mental capacity to pursue his legal rights during the one-year period. Petitioner, however, does not present any authority, and the Court has found none, holding that minority during the one-year limitations period warrants equitable tolling.[6] Further, he fails to explain how his youth affected his ability to understand the legal procedures to file a federal petition or to demonstrate that he acted with diligence during the one-year period. *See Taylor v. Rozum*, 2005 WL 2660378 *3 (E.D. Pa. 2005) (declining to apply equitable tolling because the fact that the petitioner was young, confused, and unfamiliar with the judicial system did not rise to an extraordinary circumstance); *Minniefield v. Gomez*, 2004 WL 722003 *3 (D. Conn. March 29, 2004) (declining to apply equitable tolling because "[t]he mere fact that a person is sixteen or seventeen years of age is not an extraordinary impediment to filing a timely petition in federal court."); *Ambers v. Cockrell*, No. 3:01-CV-2018-G, 2002 WL 1544703 *2 (N.D. Tex. July 11, 2002) (declining to apply equitable tolling where petitioner, who was fifteen years old at the time he was convicted, waited eight years from the time of his conviction until he filed his federal petition and failed to specify any disability or mental incapacity as a result of being a minor).

In addition, while Petitioner claims that Post Traumatic Stress Disorder, Attention Deficit Hyperactivity Disorder, and Battered Child Syndrome (Doc. 29 at 4; Doc. 33 at 2-3) affected his

---

[5] As noted above, Petitioner turned 18 years old, shortly after the one-year limitations period expired.

[6] The federal circuit court of appeals have not addressed the issue and most lower courts have found federal petitions untimely even assuming equitable tolling until the age of majority. *See Roy v. Phelps*, 2011 WL 1302935 *4 (D. Del. 2011); *Hamilton v. Gonzalez*, 2009 WL 3517612 *4 (N.D. Cal. 2009); Rowe, 2008 WL 3850937 *4 n. 10.

mental capacity during the one-year period, Petitioner does not meet the high burden of establishing that his conditions prevented the timely filing of his federal petition. *See Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (while mental illness may support equitable tolling of the limitations period, it does not do so as a matter of course and the petitioner bears the burden of proving rare and exceptional circumstances). Even when liberally construed, his pleadings fail to explain how his conditions rendered him incapable of pursuing his legal rights. *See Smith v. Kelly*, 301 Fed. Appx. 375, 378 (5th Cir. 2008) (unpublished *per curiam*) (mental illness must render the petitioner unable to "pursue his legal rights during" the relevant time period, and unsupported, conclusory assertions of mental illness are insufficient to support equitable tolling). Petitioner opposes Respondent's contention that he presented only bald assertions and conclusory statements. (Doc. 33 at 3). Yet, he argues only that his "condition [wa]s a significant setback for a juvenile" and that he was subsequently able to present his claims only with the help of general population inmates. *Id.* Petitioner's allegations certainly do not rise to the type of extraordinary circumstances that justify equitable tolling.[7]

Next, relying on the May 2011 motion for extension of time to file his federal petition, Petitioner argues that he "has been diligent in his attempts to gain proper access to the Court" despite his "juvenile lock-up" and denial of "adequate access to the law library." (Doc. 22 at 1). The one-year statute of limitations, however, expired in April 2011, over a month before Petitioner requested the extension. Based on these facts, requesting an extension does not

---

[7] Petitioner cites generally *J.D.B. v. North Carolina*, ___ U.S. ___, 131 S. Ct. 2394 (2011), to contend that juvenile offenders have "limited mental and emotional capacity when confronted with something as complex as the law." (Doc. 29 at 11). *J.D.B.*, however, was a direct criminal appeal involving "in custody" issues under *Miranda v. Arizona*, 384 U.S. 436 (1966), not equitable tolling of the one-year federal limitations period.

evidence due diligence. Moreover, because Petitioner does not allege that he was misled by the clerk or the court, his case does not present exceptional circumstances warranting equitable tolling. *Cf. Prieto v. Quarterman*, 456 F.3d 511, 514-16 (5th Cir. 2006) (equitable tolling applied where petitioner requested and received extension of time from district court before deadline to file habeas petition and relied in good faith on that extension); *Dimas v. Dretke*, 115 Fed. Appx. 679, 680 (5th Cir. 2004) (unpublished *per curiam*) (granting equitable tolling because petitioner sought extension to file federal petition within limitations period, the motion was denied after limitations expired, and petitioner filed his federal petition before deadline specified by court in ruling that motion was unnecessary).[8]

Petitioner also relies on his youthful-offender status as a basis for equitable tolling. Under the Youthful Offender Program (YOP), TDCJ is required to maintain a separate housing area for offenders under eighteen years of age. (Doc. 23, exh. A at 2). While youthful offenders must work and recreate separately from the adult inmate population, they may attend school and religious services together if seated separately. *Id.* In addition, TDCJ must separate youthful offenders from adult inmates during ingress and egress during shared activities. *Id.*

Petitioner asserts that, as a YOP inmate, he "did not have adequate access to a law library to begin working on [t]his cause until his 18th birthday, [on] April 20, 2011." (Doc. 3 at 1). TDCJ's records, however, reflect Petitioner visited the law library 14 times between May 2010 and December 2010 – all before his eighteenth birthday. (Doc. 17, exh. C). Moreover, while his "lay in passes" to visit the law library were limited to fifteen-minutes, Plaintiff concedes that

---

[8] In this case, the Clerk of the United States District Court for the Southern District of Texas did not file the May 2011 motion for extension of time because Petitioner did not have a section 2254 case pending in that court. (Doc. 22 at 2).

library officials often permitted him to remain in the law library longer.  (Doc. 22 at 5-6).  In fact the Law Library Visitation Log reflects that of the fourteen library visits that Petitioner made during the one-year limitations period, four lasted about one hour and another five well exceeded one hour, with at least one reaching two hours.  (Doc. 17, exh. C).  While Petitioner alleges that correctional officers, who "work[ed] the doors," harassed him when he sought access to the law library, he only references one incident, which occurred in January 2012, long after the one-year statute of limitations elapsed.  (Doc. 22 at 5, 7).

In addition, Petitioner claims that, as a YOP inmate, he could not receive assistance from general population inmates while in the law library.  (Doc. 18 at 2-3).  According to TDCJ policy, however, Petitioner could have requested a legal visit with a general population inmate even as a youthful offender.  (Doc. 23, exh. A at 1 and 4).  In his *Declaration*, Petitioner avers that TDCJ never informed youthful offenders that they were "allowed to have any kind of legal visit[] with an inmate" in general population, but that TDCJ  always communicated that any contact between youthful offenders and general population inmates would result in a disciplinary violation for both parties.  (Doc. 25 at 1).  He suggests the latter communications were often "intimidating so that any reasonable person under the same or similar circumstances would deduce that legal visits [were] not permitted between inmates." *Id.*[9]  He also implies that a *new* policy separating general population inmates from youthful offenders in the law library went into

---

[9] To support his claims, Petitioner requests Respondent to provide "[a]ny and all documents from the Clemens Unit Law Library [where he is incarcerated] . . . for the past 12 months that testify to the number of legal visits requested between all inmates . . ., inclusive of general population, segregation, trusty camp, G4 status, and youthful offender." (Doc. 24 at 1). He also requests any documents that barred "youthful offenders . . . from law library time with general population [inmates] except through an approved legal visits," and that showed "denial of requested legal visits between any and all Clemens Unit offenders in the past 12 months." *Id.*

effect in October 2010. (Doc. 18 at 3; Doc. 29 at 8). Respondent disputes the latter assertion relying on an affidavit from the Clemens Law Library Librarian, who explains that no new policy was initiated since her employment in 2005 and that youthful and general population offenders have always attended the library separately. (Doc. 33, Exh. A).

Even assuming Petitioner did not know that, as a YOP inmate, he could have sought permission to visit with a general population inmate about legal matters, his pleadings are silent as to whether and when he would have made such a request, and whether the failure to do so interfered with his ability to file a timely federal petition. Nevertheless, as noted above, Petitioner had access to the law library during the one-year limitations period, while he was a youthful offender. In light of this, his assertion that he did not know that he could have had a legal visit with an adult offender does not present the type of exceptional circumstances justifying equitable tolling. Moreover, insofar as Petitioner seeks to challenge the constitutionality of TDCJ policy limiting his access to general population inmates (*see* Doc. 18 at 3), his request fails. TDCJ does not have a complete ban on inmates assisting each other with writ petitions as the Supreme Court found unconstitutional in *Johnson v. Avery*, 393 U.S. 483, 490 (1969) (holding that a ban on inmates assisting each other was unconstitutional).

Furthermore, Petitioner seeks to rely on a failure-to-protect incident that allegedly caused him to be extorted by another inmate. (Doc. 18 at 1-2). His allegations, however, are conclusory at best. Petitioner fails to explain when and how TDCJ failed to protect him or how, or by whom, he was extorted. *Id.* More importantly, his pleadings also are silent as to how the alleged failure to protect and resulting extortion interfered with his ability to file a timely federal petition. *Id.* Likewise, Petitioner fails to explain how the alleged extortion "exacerbated" his

"developmental disorders," and how that could possibly have affected the timely filing of his federal petition. *Id.* at 3-4.

Next, Petitioner contends that his TDCJ Unit was on lock down in May and June 2011, denying him adequate access to the law library and preventing the timely filing of his federal petition. (Doc. 3 at 1-2; Doc. 18 at 4). According to TDCJ records, Petitioner's Unit was on lockdown in June 2011, but not in May 2011. (Doc. 17, exh. D). Thus, because the limitations period expired on April 1, 2011, any lockdown in May 2011 is irrelevant for purposes of equitable tolling.

The Court concludes that Petitioner cannot carry his burden of establishing that equitable tolling is warranted in this case. *See Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002) (party seeking equitable tolling has burden of showing entitlement to such tolling).

<u>State Created Impediment</u>

In his March 2012 *Objections*, Petitioner alleges for the first time a state created impediment stemming from the totality of the circumstances surrounding his case. (Doc. 29 at 3). "To invoke section 2244(d)(1)(B), a petitioner must show that: "(1) he was prevented from filing a petition, (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). These requirements imply an element of causality and materiality with respect to a prisoner's ability to file his federal petition. *See Upchurch v. Thaler*, No. 3-10-CV-0987-D, 5-6 (N.D. Tex. Jan 28, 2011) (collecting cases), *recommendation accepted*, 2011 WL 1193209 (N.D. Tex. Mar. 30, 2011). Thus, a petitioner "must also show that . . . [the impediment] actually *prevented* him from timely filing his habeas petition." *Krause v. Thaler*, 637 F.3d 558, 561 (5th Cir. 2011) (emphasis in original).

Here, there is no evidence that Petitioner was prevented from filing because of a state-created impediment. The unspecified failure-to-protect/extortion incident, Battered Child Syndrome/ Post Traumatic Stress Disorder, separation of youthful and general population inmates in the law library, and the May 2011 lockdown are insufficient to establish the requisite state impediment and causal connection. (Doc. 35 at 1-7). Further, even assuming a state impediment because Petitioner did not know that, as a YOP inmate, he could have requested a legal visit with a general population inmate, he has not established a causal connection. Petitioner merely states that he "would have pursued exhaustive measures in exercising that priority," as he did after being released from the YOP. (Doc. 35 at 3). He does not allege, much less establish, a causal link between the alleged denial of access to a general population inmate and his inability to file a timely federal petition. In addition, his pleadings are silent as to how the denial of access prevented him from filing a timely section 2254 petition. *See Krause*, 637 F.3d at 561-62 (state prisoner who only alleged that library at transfer facility was inadequate failed to establish that he was prevented from timely filing habeas petition; prisoner failed to allege that transfer facility's lack of legal materials prevented him from filing timely habeas application). Accordingly, statutory tolling on the basis of a state-created impediment does not apply under the facts of this case, even when considering Petitioner's YOP status. Therefore, the petition should be dismissed with prejudice as time barred.

**B.     The Petition Lacks Merit**

Even if timely, the petition lacks merit. Habeas corpus relief is precluded unless the state court's adjudication on the merits

(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). Petitioner bears the burden of establishing that he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). His burden is "difficult to meet," however, as the decisions of the state court are reviewed under a "highly deferential standard" and afforded "the benefit of the doubt." *Harrington v. Richter*, 562 U.S. \_\_\_, \_\_\_, 131 S. Ct. 770, 786, 788 (2011); *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted).

Voluntariness of Guilty Pleas and<br>Coerced Confession (Claims 1 and 2)

Petitioner asserts his guilty pleas were involuntary because his confession was coerced. Relying on an affidavit from Charles Slaton, Petitioner's defense counsel, the state habeas court rejected these claims, finding *inter alia* that the guilty pleas were knowing and voluntary.

> 41 . Applicant, fully informed, freely and voluntarily waived his rights and entered pleas of guilty to the cases.
>
> 42. Slaton did not coerce Applicant to accept the State's plea bargain offer, and Applicant's pleas were not coerced .
>
> 43. Applicant's claims of psychological abuse and Battered Child Syndrome were evaluated and reviewed by several experts in psychology and psychiatry.
>
> 44. Applicant's sanity or competency was never an issue.
>
> 45. Applicant had a rational understanding of the charges against him, was able to participate in negotiations and review of his cases, and had a rational understanding of the adversarial nature of the criminal proceedings.

. . .

> 51. Applicant understood that the decision to go to jury trial or to plead was his.
>
> 52. Applicant freely, knowingly, and voluntarily entered into the plea bargain agreement with the State with no coercion by Slaton.
>
> 53. Applicant testified under oath at his plea that Slaton had explained all of his rights and the agreements contained in the documents he signed, that he understood the explanations given by Slaton, and that he was waiving those rights to accept the plea agreement.
>
> 54. Applicant also testified that he signed waivers of his right to appeal the cases because he was satisfied the plea agreements had been kept and he did not wish to appeal.
>
> 55. Applicant fully understood the plea agreement.

SHCR-01 Vol. 3 at 492-93.

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). A guilty plea is knowing, voluntary and intelligent if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *See Brady v. United States*, 397 U.S. 742, 749-50 (1970). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea and any concomitant agreement will be upheld on federal review." *Deville v. Whitley*, 21 F.3d 654, 657 (5th Cir. 1994) (quotation and quoted case omitted).

The state court record reflects Petitioner entered knowing and voluntary guilty pleas. Petitioner executed written judicial confessions to the charges against him and written plea agreements, which were signed by Petitioner, the prosecutor, and defense counsel, who averred that Petitioner "understood his rights." SHCR-01 Vol. 3 at 392, 394, 482; SHCR-02 Vol. 1 at

41, 43-44; SHCR-03 Vol. 1 at 44, 46-47; SHCR-04 Vol. 1 at 43, 46-47.  These official court records "are entitled to a presumption of regularity and are accorded great evidentiary weight" on habeas corpus review.  *Hobbs v. Blackburn*, 752 F.2d 1079, 1081–82 (5th Cir. 1985) (citations omitted).  In addition, under oath during the plea hearing, Petitioner indicated that defense counsel had explained to him the plea agreements and all his rights, and that he understood his attorney's explanations.  RR at 4-5.[10]  "Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002) ("Reviewing courts give great weight to the defendant's statements at the plea colloquy.").

 Petitioner does not allege any circumstances that rendered his pleas involuntary apart from the allegations that his confession was coerced by law enforcement officers because of Battered Child Syndrome and years of "extreme verbal, emotional, mental, and physical abuse" from his father/victim.  (Doc. 1 at 7-8).  However, the fact that officer improperly "extract[ed] a confession" from Petitioner, when he was only fifteen years old and suffering from Battered Child Syndrome, does not establish that the entry of his guilty pleas, when he was sixteen years old, was unknowing or involuntary.  (Doc. 1 at 7; Doc. 36 at 1-2).  The mere fact that a confession may have been coerced does not taint the voluntariness of a later guilty plea, so long as that plea was given knowingly and voluntarily.  *Williamson v. State of Alabama*, 441 F.2d 549, 550 (5th Cir. 1971) (per curiam) (citing *McMann v. Richardson*, 397 U.S. 759, 768-771 (1970); *Chambers v. Beto*, 428 F.2d 791, 793 (5th Cir. 1970)) (holding a voluntary guilty plea waives a

---

 [10] RR refers to the Reporter's Record of Petitioner's guilty plea.  It is located with SHCR-01, Event ID 2462872.

claim of coerced confession). A guilty plea "represents a break in the chain of events which has preceded it." *Trahan v. Estelle*, 544 F.2d 1305, 1309 (5th Cir. 1977).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson,* 411 U.S. 258, 267 (1973).

The state court's denial of Petitioner's first and second grounds were reasonable applications of federal law. Therefore, these claims fail.[11]

### Ineffective Assistance of Counsel (Claims 3-5)

Next, Petitioner contends defense counsel rendered ineffective assistance when he (1) failed to inform the prosecution that witness Jeffery Saxon Scott was an accomplice for helping moving the victim's body, (2) failed to investigate Petitioner's psychological condition and, thus, establish his diminished capacity, and (3) failed to advise Petitioner of the consequences of his plea and caused him to agree to a plea bargain under duress by saying that the prosecution would stack his sentences. (Doc. 1 at 8-11). However, the state habeas court rejected those arguments and concluded Petitioner received effective assistance of counsel in connection with his guilty pleas. SHCR-01 Vol. 3 at 493.

Respondent correctly asserts that Petitioner's voluntary guilty pleas waived his claims of

---

[11] Relying on *J.D.B. v. North Carolina*, ___ U.S. ___, 131 S. Ct. 2394 (2011), Petitioner argues that he, as a juvenile, should have been treated differently and his age and capacity should have been considered by law enforcement officers during his interrogation. (Doc. 1 at 8; Doc. 36 at 4-5). Unlike *J.D.B.*, however, Petitioner did not file a direct appeal and the issue of whether he was "in custody" under *Miranda v. Arizona*, 384 U.S. 436 (1966), cannot be considered.

ineffective assistance. *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983) (once a defendant enters a knowing, intelligent, and voluntary guilty plea, all non-jurisdictional defects in the criminal proceedings are waived except for claims of ineffective assistance of counsel relating to the voluntariness of the plea).

Even if not waived, his claims have no merit. Petitioner has not shown that the state court's decision rejecting his claims was an unreasonable application of clearly established federal law. He does not allege, much less establish, that "there is a reasonable probability that, but for counsel's errors [in failing to advise the prosecutor that the state witness was an accomplice], he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (prejudice prong). In addition, contrary to Petitioner's assertions, defense counsel conducted extensive pretrial investigations into Petitioner's claims of abuse and psychological damage caused by his father/victim, including evaluation by several licensed psychologists and psychiatrists. SHCR-01 Vol. 3 at 491-92 (findings 26-37, 43); 478-79. Further, Petitioner's contention that he entered into the plea bargain agreement under duress, when counsel advised him the State would stack his sentences, is conclusory and unsupported. *Ross v. Estelle*, 694 F.2d 1008, 1011–12 and n. 2 (5th Cir. 1983) ("[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value."). Accordingly, Petitioner's ineffective assistance of counsel claims fail.

Unconstitutional Arrest and Search and Seizure (Claims 6-7)

Petitioner's knowing and voluntary guilty pleas also waived his claims that his

convictions were obtained by use of evidence from an illegal arrest, search, and seizure. *See Norman v. McCotter*, 765 F.2d 504, 511 (5th Cir. 1985) (illegal searches and seizures were nonjurisdictional defects waived by knowing and voluntary guilty plea). Notwithstanding waiver, Fourth Amendment claims are barred from federal habeas review under *Stone v. Powell*, 428 U.S. 465, 494 (1976), if the petitioner had a full and fair opportunity to litigate his claims. *See Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (quoted case omitted) (interpreting "opportunity for full and fair litigation" to mean just that: 'an opportunity'"). In this case, as Respondent correctly notes, Petitioner had the opportunity to challenge the legality of his arrest, search, and seizure prior to pleading guilty. *See* Tex. Code Crim. Proc. Ann. arts. 18.01-.07, 18.14, and 38.23 (West 2012). Because he was not foreclosed from litigating his Fourth Amendment claims in state court, the Court may not review them in this federal habeas proceeding. Therefore, the claims fails.

C.  **<u>Evidentiary Hearing Not Required</u>**

Petitioner requests an evidentiary hearing. (Doc. 35 at 3). However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster,* ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)). Here, as in *Pinholster*, the petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court. As discussed above, Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state

court. Therefore, Petitioner is not entitled to a federal evidentiary hearing.[12]

### III.  RECOMMENDATION

It is recommended that the petition for writ of habeas corpus be **DISMISSED** with prejudice as barred by the one-year statute of limitations and, alternatively, that it be **DENIED** on the merits.

SIGNED October 23, 2012.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[12] Contemporaneously with this recommendation, the undersigned denied Petitioner's motions for appointment of counsel and for production of documents. (Doc. 35-41).